IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TOMBSTONE EXPLORATION CORP., a Canadian federal corporation,<br><br>                  Plaintiff,<br>v.<br><br>EUROGAS, INC., a Utah corporation; EUROGAS, A.G., a Swiss stock corporation; and ZB CAPITAL, A.G., a Swiss stock corporation; RIATA MINERALS INC., a Montana corporation; WOLFGANG RAUBALL, an individual; EDWARD MUELLER, an individual; JACK BAUSKA, an individual; ALEXANDRA BUENING, an individual; EIKE PETER LUDES, an individual; HANS PETER KUNZ, an individual; ALEXANDER BUENING, an individual; MICHAEL UDO CHRISTIAN LUDES, an individual; and TUDOR HOLDING GMBH, a foreign corporation,<br><br>                  Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION**<br><br>Case No. 2:15-cv-00195-DN<br><br>District Judge David Nuffer |

Defendants Jack Bauska ("Bauska"), a Montana resident, and Riata Minerals, Inc. ("Riata"), a closely-held Montana corporation (collectively, "Defendants"), filed a Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1] The parties' memoranda and supporting documentation have been carefully reviewed and considered in light of the governing law. For the reasons set forth below, the motion is DENIED.

---

[1] Motion to Dismiss under Rule 12(b)(2) and Supporting Memorandum (Motion), docket no. 40, filed June 15, 2015.

## BACKGROUND

In 2013, Plaintiff Tombstone Exploration Corp. ("Tombstone") and another defendant, EuroGas, Inc. ("EuroGas"), began negotiations regarding EuroGas's participation in Tombstone's mining activities.[2] Tombstone alleges that EuroGas agreed to remit $36,540 to the Bureau of Land Management ("BLM") on behalf of Tombstone for the annual maintenance fee due on Tombstone's 261 mining claims in Arizona.[3] However, the check EuroGas issued on August 28, 2013 to the BLM for Tombstone's fee was returned due to insufficient funds.[4] Tombstone was not notified of the failure to pay the fee in a timely manner and, as a result, the BLM did not renew Tombstone's mining claims.[5] Tombstone subsequently became aware that EuroGas, a company domiciled and located in Utah,[6] Bauska, and two other named defendants "arranged to have Riata, a company owned and controlled by them, re-stake [Tombstone's] [m]ining [c]laims in Riata's name."[7] Bauska is the president, director, and a controlling stockholder of Riata.[8] After Tombstone made "numerous requests" to have the mining claims transferred back into its name, EuroGas only offered to do so on terms that were not acceptable to Tombstone.[9] EuroGas also advised Tombstone that EuroGas had paid for the mining claims[10]

---

[2] Amended Complaint ¶ 18, docket no. 6, filed March 27, 2015.

[3] *Id.* ¶ 19.

[4] *Id.* ¶¶ 20, 21.

[5] *Id.* ¶¶ 22–24.

[6] *Id.* ¶ 2.

[7] *Id.* ¶ 26.

[8] Declaration of Jack Bauska ¶ 1, docket no. 41, filed June 15, 2015.

[9] Amended Complaint ¶¶ 27–28.

[10] *Id.* ¶ 29.

Shortly thereafter, Tombstone and EuroGas entered into a Stock-for-Stock Exchange Agreement ("Agreement"),[11] which was later amended twice.[12] A key provision of the Second Amendment to Agreement required Riata to transfer the mining claims back to Tombstone on or before May 13, 2014.[13] On May 14, 2014, Bauska and other defendants represented to Tombstone that the mining claims were in good standing with the BLM and were in the process of transfer from Riata to Tombstone.[14] But in June 2014 the BLM advised Tombstone that the rights to the mining claims transferred to Tombstone were no longer active because EuroGas's August 28, 2013 check to pay the BLM for the claims had been returned due to insufficient funds.[15] Tombstone alleges that Bauska knew, or should have known, his representations regarding the mining claims were false and that Tombstone would rely on them.[16] Because Tombstone alleges that the intentional misrepresentations of Bauska and other defendants were the "direct and proximate cause of damages to Tombstone," Tombstone now claims damages and specific performance from EuroGas and Riata.[17]

## STANDARD OF REVIEW

To determine a motion to dismiss for lack of jurisdiction prior to trial, "'the plaintiff need only make a prima facie showing'" in order to meet its burden.[18] Thus, Tombstone's allegations in its complaint "'must be taken as true to the extent they are uncontroverted by the defendant's

---

[11] *Id.* ¶ 30; Stock-for-Stock Exchange Agreement, docket no. 6-1, filed March 27, 2015.

[12] *See* First Amendment to Stock-for-Stock Exchange Agreement (First Amendment to Agreement), docket no. 6-2, filed March 27, 2015; Second Amendment to Stock-for-Stock Exchange Agreement (Second Amendment to Agreement), docket no. 6-3, filed March 27, 2015.

[13] *Id.* ¶ 54; Second Amendment to Agreement at 2.

[14] Amended Complaint ¶¶ 55, 57.

[15] *Id.* ¶ 59.

[16] *Id.* ¶¶ 113, 114.

[17] *Id.* ¶¶ 115, 116, 140.

[18] *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (quoting *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984)).

affidavits.'"[19] Where there are conflicting affidavits, "'all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'"[20]

## ANALYSIS

Defendants argue that personal jurisdiction over Bauska and Riata in this court violates due process and that Tombstone's Amended Complaint should be dismissed against them.[21] Defendants argue that dismissal is proper because neither Bauska nor Riata "had such minimum contacts with the forum state that [they] should reasonably anticipate being haled into court there," and exercising personal jurisdiction over the defendants "offends traditional notions of fair play and substantial justice."[22]

For personal jurisdiction over a nonresident defendant, the jurisdiction must be "'legitimate under the laws of the forum state'" and exercising the jurisdiction "'does not offend the due process clause of the Fourteenth Amendment.'"[23] Because Utah's long-arm statute authorizes "jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution,"[24] there is no need to "'conduct a statutory analysis apart from the due process analysis.'"[25]

---

[19] *Id.*

[20] *Id.*

[21] Motion at 4.

[22] *Id.*

[23] *Buck v. Kentucky Horse Racing Comm'n*, No. 2:13-cv-342-CW-PMW, 2014 WL 4628603, at *6 (D. Utah March 3, 2014) (quoting *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011)).

[24] Utah Code § 78B-3-201(3).

[25] *Buck*, 2014 WL 4628603, at *6 (quoting *ClearOne Commc'ns*, 643 F.3d at 763).

## Due Process

A two-step analysis is required to determine whether jurisdiction over nonresident defendants is permitted under the Fourteenth Amendment. First, the defendants must have "such minimum contacts with the forum state that [they] should reasonably anticipate being haled into court there."[26] If the defendants do have minimum contacts with the forum, the analysis proceeds to the second requirement, which is determining "whether the exercise of personal jurisdiction over the defendant[s] offends traditional notions of fair play and substantial justice."[27]

### 1. The Defendants' relationship with EuroGas supplies minimum contacts necessary for specific jurisdiction.

To satisfy the minimum contacts standard, general or specific jurisdiction may be shown.[28] General jurisdiction can be shown "based on the [defendants'] 'continuous and systematic' general business contacts with the forum state."[29] Absent continuous and systematic contacts, specific jurisdiction can be established when defendants have "'purposefully directed' [their] activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."[30] Thus, defendants do not need to be physically present in the forum, so long as the foundational activities of the underlying action arise out of or relate to the contacts.

Tombstone has made various allegations that Bauska's and Riata's affiliation with EuroGas and involvement in the underlying cause of action satisfy the minimum contacts test. In

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (quoting *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984)).

[30] *Id.* at 1218.

turn, Bauska denies meaningful contacts with Utah in his own declaration.[31] Bauska contends that he "had no contact with Utah in connection with anything that Tombstone alleges."[32] Yet Bauska does not refute his relationship with EuroGas, a company located and domiciled in Utah.[33] Nevertheless, because Tombstone need only make a prima facie showing, Bauska's factual disputes are not material.

The quality of the contacts between Defendants and this forum is evidenced by Defendants' involvement in the contract between EuroGas and Tombstone. To satisfy the minimum contacts standard, the Supreme Court emphasized that "[i]t is . . . prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant has purposefully established minimum contacts within the forum."[34] In the Second Amendment to the Agreement, EuroGas and its parent company promise to "have Riatta [sic] Minerals deliver to [Tombstone] the two hundred sixty-one (261) mining claims currently held in Riatta [sic] Minerals' name."[35] The agreement further states that the failure of EuroGas and its parent company to have Riata transfer the mining claims would "constitute a material breach" of the agreement.[36] Though Defendants make the point that their physical presence in Utah was negligible,[37] their involvement as a central figure in the Second Amendment to the Agreement reveals significant contacts with the Utah-domiciled company, EuroGas. Tombstone claims

---

[31] Declaration of Jack Bauska ¶¶ 3–5.

[32] *Id.* ¶ 4.

[33] *See id.*

[34] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985).

[35] Second Amendment to Stock-for-Stock Exchange Agreement at 2, docket no. 6-3, filed March 27, 2015.

[36] *Id*.

[37] Bauska and Riata's Reply Memorandum in Support of Their Motion to Dismiss (Reply) at 2, docket no. 48, filed August 3, 2015.

EuroGas could be contractually responsible for Riata's activities because it can exert such control over Riata, a company that Tombstone claims is owned and controlled by EuroGas and other defendants.[38] Defendants do not dispute the relationship Tombstone alleges they have with Utah-domiciled EuroGas.[39] Therefore, Tombstone's allegation of the relationship between Riata and EuroGas makes a prima facie showing of sufficient contacts between the Defendants and the forum.

Furthermore, Riata's involvement in the contract increases the likelihood that Defendants would be haled into Utah courts. The Agreement, as drafted by EuroGas, states that "any action arising out of or relating to this Agreement shall be brought in the state or federal courts located in Salt Lake City, Utah, and each of the parties hereto submits to the jurisdiction of such courts."[40] Because EuroGas's failure to have Riata transfer the mineral rights would constitute a material breach of the central part of that agreement, Defendants were, or should have been, aware that their failure to act could spur a lawsuit in a Utah court. Moreover, Defendants' contacts are directly related to Tombstone's claims arising out of the breached Agreement and contested mining claims.

The crux of the Defendants' argument rests on their alleged similarities to defendants in *Buck v. Kentucky Horse Racing Commission*. But dismissal in *Buck* was based on the fact that the plaintiff's complaint did "not allege that any of the [defendants] ha[d] conducted any business with [p]laintiff in Utah," nor had the defendants taken any action "that would give them any reasonable anticipation that they would be 'haled into court' in Utah."[41] Defendants assert

---

[38] Amended Complaint ¶ 26.

[39] *See* Reply.

[40] Stock-for-Stock Exchange Agreement at 19.

[41] *Buck,* at *7, 2014 WL 4628603 (quoting *ClearOne Commc'ns*, 643 F.3d at 763).

that "the foregoing analysis and legal conclusion is virtually identical to what the Court should do in this case."[42] But there are a number of significant distinctions between the Defendants' case and *Buck*. Most notably, Riata and Bauska have an unrefuted business relationship with the Utah-domiciled company EuroGas, and their involvement in the Second Amendment to the Agreement meant that their inaction could cause a suit to be brought in Utah courts. Defendants have significantly more contacts with the forum State of Utah than the defendants in *Buck*.

**2. Exercising jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.**

The second prong of the due process analysis looks to "whether the exercise of personal jurisdiction over the defendant[s] offends traditional notions of fair play and substantial justice."[43] When determining fair play and substantial justice, the following can be considered: "(1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."[44] These are some factors that can "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."[45]

Relying on these factors, exercising personal jurisdiction over Riata and Bauska does not violate the fairness requirement. The fact that Defendants' interests are so aligned with EuroGas as to retain the same counsel as the Utah company[46] suggests that it will not present an undue

---

[42] Motion at 6.

[43] *Buck,* at *6, 2014 WL 4628603.

[44] *Harnischfeger Eng'rs, Inc. v. Uniflow Conveyor, Inc.*, 883 F. Supp. 608, 615–616 (D. Utah 1995).

[45] *Burger King*, 471 U.S. at 477.

[46] Plaintiff/Counterdefendant's Opposition to Motion to Dismiss at 5 n.1, docket no. 46, filed July 20, 2015.

burden on them to manage the litigation with EuroGas's presence in the forum. In addition, judicial economy would be best-served by retaining Bauska and Riata in the ongoing litigation of Tombstone's claims against them and the other named defendants.

Defendants do not refute any of Tombstone's arguments regarding the fair play and substantial justice analysis, other than stating that a lack of prejudice is "simply untrue."[47] Consequently, there is little evidence that exercising jurisdiction over Defendants offends the notion of fair play and substantial justice. Therefore, the second prong of the due process analysis is satisfied and jurisdiction over Bauska and Riata is proper.

## ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Jurisdiction[48] is DENIED.

Signed October 8, 2015.

BY THE COURT

_____
District Judge David Nuffer

---

[47] Reply 3.

[48] Motion to Dismiss under Rule 12(b)(2), docket no. 40, filed June 15, 2015.